[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 28, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15207
Non-Argument Calendar

_____

BIA No. A95-294-387

ZHUANJUN WANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 28, 2007)**

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Zhuanjun Wang petitions this court for review of the Board of Immigration

Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order of removal and denial of asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Because the BIA's decision is supported by substantial evidence, we affirm.

## I. Background

Wang, a native and citizen of China, arrived in the United States between July 19 and July 26, 2001 without being admitted or paroled. The INS issued him a notice to appear charging him with removability under the INA § 212(a)(6)(A)(i); 8 U.S.C. § 1182(a)(6)(A)(i). Wang conceded removability but filed an application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).

In his application for asylum and in his testimony before the IJ, Wang claimed that he had suffered persecution on account of his practice of Zhong Gong, which China declared to be an illegal religious organization in 1999. Wang first began practicing Zhong Gong in 1996 after being diagnosed with heart disease because he was informed that it would improve his health. Wang established and led a Zhong Gong practice in a local park with approximately sixty practitioners.

On January 1, 2000, Wang was practicing Zhong Gong in the park with his fellow practitioners when the police dispersed the group and arrested Wang. He claimed to be beaten and detained for fifteen days. Before his release, Wang was

2

forced to pay a fine and sign a confession under coercion.

After the detention, Wang claimed that he was publically reprimanded, denied a bonus, and demoted from his managerial position at the Foreign Trade Bureau.[1] Nonetheless, Wang continued to allow fellow Zhong Gong adherents to practice at his home. On April 27, 2001, police raided his home where he and eight others were practicing Zhong Gong. The police confiscated all of Wang's Zhong Gong-related material and arrested him. He was beaten and forced to squat during a one-hour interrogation. Wang claims to have been detained for a month, during which he was interrogated twice more and suffered beatings both times. Wang introduced a photograph of an injury to his leg from the beating he suffered during this second detention.

Wang testified that he became seriously ill while in detention and was released on May 28, 2001 so he could visit a doctor. His release was conditioned on paying a fine, signing a statement agreeing to no longer practice Zhong Gong, and promising to report to his local police station weekly. After the second detention, Wang was dismissed from his job. Soon after this dismissal, he decided

---

[1] In his statement, Wang had claimed that he had been "dismissed from [his] post," but he clarified during cross-examination that he had been demoted from a managerial position to a clerk.

to flee China. On July 7, 2001 he boarded a cargo ship bound for Los Angeles.[2]

After arriving in the United States, Wang learned that his wife and daughter were being harassed by the police and a fellow Zhong Gong practitioner was sentenced to a labor camp for a year. Wang testified that he will be arrested if he returns to China and that there was no place in China where he would be safe from persecution.

Under cross-examination, Wang admitted for the first time that he was hospitalized after the January 2000 detention for a broken nose. He did not have any documentation for this hospitalization, but he did present records of admission for hospitals after his May 2001 detention. These records, however, are the matter of some dispute because of inconsistencies in Wang's testimony.

Wang testified that he visited both the Armed Police and Emperor's Crown hospitals after he was released from police custody on May 28, 2001 because he was suffering from a fever and diarrhea. The government questioned Wang as to why he submitted records of admission from the Alguazil General Hospital of Shandong Province and the Railroad Hospital. Wang offered a vague response that his city, Yan Hai City, was located in Shandong Province, but he did not clarify whether the Armed Police or Emperor's Crown hospitals were also known as the

---

[2] Wang entered the United States on either July 19 or July 26, 2001. In both his application and testimony he stated that he arrived on July 26. During one the initial status hearings, however, his attorney stated that he arrived on July 19.

Alguazil General Hospital or the Railroad Hospital. There is no other evidence in the record that can clarify if these are different hospitals or not.

The government asked Wang to explain why his admission record to the Alguazil General Hospital indicated that he had been admitted on May 26, two days before he claimed to have been released from police detention. Wang then explained, for the first time, that the police had taken to him to the hospital while he was in detention. The government questioned Wang as to why the hospital records did not mention the leg injury, and he replied that he did not seek treatment for that injury because it was not as important as the fever and diarrhea. Finally, the government questioned why the admission record for the Railroad Hospital had listed Wang as a manager at the Trade Bureau if he had already been demoted to clerk. He responded saying that he claimed to be a manager because he was embarrassed and hoped for better treatment as a manager.

In support of his application, Wang submitted documents in addition to those medical records discussed above. He submitted numerous articles about the treatment of Zhong Gong followers and a 2001 State Department Report that confirms that the Chinese government has banned the Zhong Gong movement. Wang submitted a letter from his wife stating that the police continued to look for him and that she and their daughter missed him. Wang also submitted an official birth certificate that was issued after he left China; he testified that his wife sent it

5

to him after he arrived in the United States.

After the hearing, the IJ denied all relief based on an adverse credibility determination. The IJ found "substantial and material evidentiary gaps" in Wang's testimony. Specifically, the IJ noted that: (1) Wang's date of entry is inconsistent on the record; (2) Wang provided no documentation concerning his involvement in Zhong Gong; (3) Wang failed to mention in his initial application or direct testimony that he went to a hospital for his broken nose after the first detention; (4) Wang, for the first time during cross-examination, mentioned seeing a dentist, presumably because of injuries received during police detention; (5) Wang's testimony was inconsistent as to when he was released from the second detention and whether the police took him to a hospital before his release; (6) Wang's testimony was inconsistent with the medical records he submitted, especially with regards to which hospitals he was treated at; (7) Wang's initial application did not mention the leg injury and none of the submitted medical reports documented a leg injury; (8) Wang had claimed to be a manager when he was admitted to the Railroad Hospital even though he testified that he had already been demoted to a clerk; (9) Wang had claimed to have arrived in the United States with his birth certificate but then changed his recollection[3]; (10) the letter purported to be from

---

[3] The transcript of the hearing does not support this analysis; it appears that Wang consistently stated that he did not have his birth certificate when he entered the country.

Wang's wife was "scripted" particularly because it referred to their daughter in the second person as "our daughter"; and that the medical records were related to an illness that Wang had in 1994 and 1995.[4] The IJ held that Wang failed to present a credible claim for asylum, had thus failed to meet the higher burden for withholding of removal, and failed to establish eligibility for relief under the CAT.

The BIA affirmed this credibility finding, specifically noting several inconsistencies in Wang's testimony, including (1) the discrepancy between the hospitals Wang claimed to have visited and admission records he submitted; (2) the inconsistencies in when Wang was released from the second detention and whether the police took him to a hospital before his release; (3) the absence of documentation regarding Wang's leg injury and his failure to mention the injury in his application for asylum; and (4) Wang's failure to mention the broken nose he received during the first detention in either his written statement or direct examination. The BIA held that these inconsistencies were sufficient to support the adverse credibility determination against Wang and thus deny his application for asylum, withholding of removal, and relief under CAT.

---

[4] The record gives no indication of any illness that Wang may have had in 1994 or 1995, much less that his hospitalization in 2001 was due to the previous condition.

## II. Standard of Review

We review the BIA's factual findings under the substantial evidence test and must affirm its decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 817-18 (quoting Al Najjar, 257 F.3d at 1283-84) (quotations omitted). "Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). Thus we will reverse factual findings if "the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

## III. Discussion

Because Wang must establish eligibility for asylum, an adverse credibility determination—as made by the BIA in this case—may be sufficient to support the denial of an asylum application.[5] Fogue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2004); see also Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006). Once an adverse credibility determination is made, the burden shifts to Wang to show that the determination was "not supported by specific, cogent reasons or was not based on substantial evidence." Chen, 463 F.3d at 1231 (citing

---

[5] The BIA or IJ must still evaluate all evidence introduced by the applicant. See D-Muhumed, 388 F.3d at 819. In this case, the supporting documentation was considered but did not support Wang's claim of persecution.

8

Fogue, 401 F.3d at 1287).  Reliable testimony may be indicated by consistency on examination, consistency with the written application, and the absence of embellishments.  See In re B-, 21 I&N Dec. 66, 70 (BIA 1995).

Substantial evidence supports the BIA's decision to affirm the IJ's adverse credibility determination.  The BIA and IJ noted numerous inconsistencies and omissions in the Wang's application and testimony regarding his injuries.  His application did not mention either his broken nose or injured leg, and he did not mention the broken nose in his direct testimony.  With regard to the medical treatment he received, Wang's testimony was inconsistent both as to which hospitals he visited and whether he was taken to the hospital by the police or after his release.  Furthermore, Wang's testimony was not collaborated by the admission records he introduced.[6]  Contrary to Wang's argument on appeal, these inconsistencies are not minor and reconcilable, but rather go to the very heart of his claim of persecution because they concern the extent of the harm he suffered as a result of the alleged detentions.

---

[6] Wang argues on appeal that the discrepancy between the names of the hospitals that he testified to visiting and those in the admission records is due to a translation error.  Specifically, Wang claims that "Alguazil General Hospital" should be translated as "Armed Police Hospital." Wang raises this argument for the first time on appeal and therefore did not exhaust his administrative remedies.  Accordingly, we do not have jurisdiction to consider this issue. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006).

9

## IV.  Conclusion

For the foregoing reasons, we **DENY** Wang's petition.